**IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **JOLENE MEISINGER** | § | |
| **V.** | § | **No.  5:17CV103-JRG-CMC** |
| **WAL-MART ASSOCIATES, INC.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.  Before the Court is the following pending motion:

**Defendant's Motion for Summary Judgment (Docket Entry # 25).**

The Court, having reviewed the relevant briefing, recommends the motion be **DENIED**.

## I.  BACKGROUND

Jolene Meisinger ("Plaintiff") filed this action against Wal-Mart Associates, Inc. ("Defendant" or "Walmart") under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2691, *et seq*.  An aggrieved employee may bring actions against her employer for violating her substantive FMLA rights (prescriptive claim) or for retaliating against her for invoking her FMLA rights (proscriptive claim). *Grant v. Select Specialty Hosp. - S. Dallas, Inc*., 2010 U.S. Dist. LEXIS 97085, at *5 (N.D. Tex. Sept. 15, 2010).  Plaintiff asserts both claims here.  She contends Defendant interfered with her FMLA entitlement and retaliated against her by terminating her employment.

## II. DEFENDANT'S MOTION

Defendant moves for summary judgment on Plaintiff's interference and retaliation claims.

Regarding the interference claim, Defendant asserts Plaintiff cannot establish she gave Walmart proper notice of her intention to take intermittent leave under the FMLA nor can she show Walmart denied her the benefits to which she was entitled under the FMLA.

Regarding the retaliation claim, Defendant asserts Plaintiff cannot establish she was treated less favorably than an employee who had not requested leave or that her termination was because she sought protection under the FMLA. According to Defendant, Plaintiff was terminated for a legitimate, non-discriminatory reason (violation of its attendance policy), and Plaintiff cannot point to any competent summary judgment evidence to establish a question as to the veracity of Walmart's stated reason for her termination.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c). The movant bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir. 1992), *cert. denied,* 506 U.S. 825 (1992).

The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993).  Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting

specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  It is not enough for the party opposing summary judgment to rest on mere conclusory allegations or denials in his pleadings.  *Topalian,* 954 F.2d at 1131.  The nonmovant must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case.  *Dunn v. State Farm & Casualty Co.,* 927 F.2d 869, 872 (5th Cir. 1991).  If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing the proof, the court views the evidence in the light most favorable to the nonmovant.  *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

## IV. SUMMARY JUDGMENT EVIDENCE

Defendant submitted the following evidence in support of its motion: (1) Excerpts from the Oral Deposition of Plaintiff ("Plaintiff's Depo."); (2) Plaintiff's Depo. Exhibit 3: Plaintiff's Responses to Defendant's First Set of Written Interrogatories to Plaintiff ("Def. Exh. B"); (3) Plaintiff's Depo. Exhibit 6: New Associate Checklists ("Def. Exh. C"); (4) Plaintiff's Depo. Exhibit 7: Spreadsheet of Plaintiff's CBLs (Filed Under Seal) ("Def. Exh. D"); (5) Plaintiff's Depo. Exhibit 8: Attendance/Punctuality Policy 3-12-13 ("Def. Exh. E"); (6) Plaintiff's Depo. Exhibit 9: FMLA Leave of Absence Policy ("Def. Exh. F"); (7) Plaintiff's Depo. Exhibit 10: Plaintiff's Personal Associate Summary Sheet ("Def. Exh. G"); (8) Plaintiff's Depo. Exhibit 11: Attendance/Punctuality Policy 10-15-16 ("Def. Exh. H"); (9) Plaintiff's Depo. Exhibit 13: Plaintiff's Three Coachings ("Def. Exh. I"); (10) Plaintiff's Depo. Exhibit 15: Aug. 18, 2016 LOA Packet (Filed under Seal) ("Def. Exh. J"); (11) Plaintiff's Depo. Exhibit 16: Sept. 8, 2016 Notification of Leave Approval (Filed under

Seal) ("Def. Exh. K"); (12) Plaintiff's Depo. Exhibit 17: Jan. 31, 2017 Absence Denial (Filed under Seal) ("Def. Exh. L"); (13) Plaintiff's Depo. Exhibit 18:  Jan. 23, 2017 Disability and Leave Approval (Filed under Seal) ("Def. Exh. M"); (14) Plaintiff's Depo. Exhibit 19: Jan. 25, 2017 Leave Approval/Closure (Filed under Seal) ("Def. Exh. N"); (15) Plaintiff's Depo. Exhibit 20: Feb. 15, 2017 LOA Packet (Filed under Seal) ("Def. Exh. O"); (16) Plaintiff's Depo. Exhibit 21: March 8, 2017 Disability Denial & Leave Approval (Filed under Seal) ("Def. Exh. P"); (17) Plaintiff's Depo. Exhibit 22: March 16, 2017 LOA Packet (Filed under Seal) ("Def. Exh. Q"); (18) Plaintiff's Depo. Exhibit 23: Statement of Final Pay ("Def. Exh. R"); and (19) Affidavit of Market Human Resource Manager, Angela Porchia, and attachments ("Porchia Aff.").

Plaintiff attached the following evidence to her response: (1) Declaration of Plaintiff ("Plaintiff's Decl."); (2) Plaintiff's Depo. Exhibit 9: FMLA Leave of Absence Policy ("Pl. Exh. B"); (3) Plaintiff's Depo. Exhibit 11: Attendance/Punctuality Policy - 10-15-16 ("Pl. Exh. C"); (4) Plaintiff's Depo. Exhibit 17: Sedgwick Absence Denial - 1-31-17 ("Pl. Exh. D"); (5) Affdavit of Market Human Resource Manager, Angela Porchia, with attachments; and (6) Plaintiff's final paycheck ("Pl. Exh. F").

Taken together, the parties' evidence establishes the following.

***Plaintiff's employment with Walmart***

Plaintiff was hired by Walmart as a temporary employee in November 2012. Plaintiff's Depo. at 89:23-90:4. Plaintiff worked at Walmart Store No. 181 in New Boston, Texas.  Porchia Aff., ¶ 2. Plaintiff went through orientation and training when she first started at Walmart.  *Id.* at 92:23-25. She became a full time employee by the end of 2013.  *Id.* at 106:4-5.  On July 9, 2016, Plaintiff was promoted to department manager. *Id.* at 92: 20-22.

Throughout her employment, Plaintiff received training on, and was provided access to, Walmart's associate and management policies and procedures. *Id*. at 93:1-94:11; Def. Exhs. C, D. Plaintiff's training included the completion of computer-based learning modules ("CBLs") on Walmart's policies and procedures. Plaintiff's Depo. at 93:14-94:1 & 95:21-23 & 97:5-17; Def. Exh. D. Plaintiff testified she was generally aware of Walmart's policies. *Id.* at 97-99.

***Walmart's Policies and Procedures***

**Walmart's Discrimination and Harassment Prevention Policy**

Walmart is an equal opportunity employer that provides associates and managers with training on the prevention, identification, and investigation of possible discrimination, retaliation, and harassment. Porchia Aff., ¶ 5.  Walmart's Discrimination and Harassment Prevention Policy (PD-19) strictly prohibits unlawful harassment, discrimination, and retaliation in the workplace.  *Id.* Walmart also maintains a Statement of Ethics Policy, which provides that discrimination and retaliation in the workplace will not be tolerated.  *Id.* To ensure strict adherence to the policy, associates are provided with procedures for reporting allegations of discrimination, harassment, or retaliation.  *Id.*  Plaintiff testified Walmart maintains an ethics hotline so that associates can call, even anonymously, to report any concerns or problems. Plaintiff's Depo. at 98:7-11.

**Walmart's Open Door Policy**

Walmart maintains an open door policy to encourage associates to voice concerns to anyone in management. *Id.* at 97:24-98:6; *see also* Def. Exh. F at pg. 4 ("If your request for a leave of absence has been denied, you may use the Open Door. You should first contact your leave specialist at Sedgwick [third-party administrator] to discuss your concerns, If you still have concerns after the discussion with your leave specialist, you may inform your HR representative that you wish to use

5

the Open Door and he/she will advise you on next steps.").

**Walmart's FMLA Leave Policy**

Walmart also maintains a FMLA Policy that applies to all associates and management who are eligible. Porchia Aff., ¶ 6; Def. Exh. F; Pl. Exh. B. Walmart's FMLA Policy prohibits the discrimination or retaliation against an associate for requesting or taking FMLA leave. *Id.* Walmart utilizes a third party administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), to administer leaves of absence under the FMLA. *Id.*

According to the March 1, 2016 FMLA Leave of Absence Policy, associates who need to contact Sedgwick regarding leave of absence matters could do so through Sedgwick's online system which could be accessed on the Wire or Walmartone.com.  Def. Exh. F at pg. 1.  A phone number for Sedgwick was also provided.  *Id.*  The policy explains that FMLA leave may be taken continuously or on a reduced schedule or an intermittent basis.  *Id.* "Continuous leave means leave taken one calendar day following another for more than three days." *Id*.  "Intermittent leave means leave taken in separate blocks of time due to a single reason. Examples would include taking less than a full day off to obtain chemotherapy treatments, physical therapy or for prenatal care during your pregnancy." *Id.*

The policy encouraged employees to try to schedule intermittent or reduced schedule FMLA leave to accommodate Walmart's business operations.  *Id.*  The policy provides an employee may take intermittent or reduced schedule FMLA leave under certain circumstances (i.e., when the employee's health care provider certifies it is medically necessary for the employee to recover from a serious health condition or to care for a child, spouse, or parent who suffers from a serious health condition).  *Id*. at pg. 2.

Under "Requesting FMLA Leave," the policy provides the following regarding "Notice:"

You must give 30 days' advance notice to your manager and Sedgwick if the need for leave is foreseeable You may provide notice to Sedgwick by submitting your leave request online through viaOneExpress or by calling Sedgwick at 1(800) 492-5678. If the need for leave is not foreseeable, you must give notice as soon as possible, generally the same day or the following business day after learning that you need to take leave. If you cannot give personal notice due to an emergency, your authorized representative may give notice.

After you provide notice of your need for leave, Sedgwick will notify you whether you are eligible for FMLA leave and whether you have FMA leave available. You will be required to submit the appropriate certification forms to Sedgwick within 20 days from the date you receive the Notice of Eligibility and Rights & Responsibilities.

If you miss work for more than three days because you or a family member are ill or injured, you should immediately contact Sedgwick, so it can be determined whether FMLA leave is available to you.

If you do not provide accurate information on any FMLA leave form, or use FMLA leave for any reason other than that for which your leave was requested and approved, you will be subject to disciplinary action up to and including termination.

*Id.*

Plaintiff testified she was aware Sedgwick managed the FMLA requests made by associates and that all documentation related to a requested leave of absence ("LOA") was required to be submitted to Sedgwick. Plaintiff's Depo. at 115:2-20. Plaintiff also acknowledged the personnel for Store No.181 (Christi McGowen) did not make leave decisions on behalf of Walmart. *Id.* at 115:15-17.

### Walmart's Attendance/Punctuality Policy

Walmart also maintains an Attendance/Punctuality Policy for the State of Texas ("Attendance Policy"). Def. Exhs. E, H.   Under the former policy, once an employee had four unauthorized absences, it would trigger a coaching.  Def. Exh. E; Plaintiff's Depo. at 103:11-15.  From there, each

additional absence would go to the next level of coaching, with termination occurring at seven unexcused absences.  *Id*. at 103:16-104:1. In 2013, while under the former attendance policy, Plaintiff received a First, Second, and Third Written Coaching for Attendance/Punctuality regarding unexcused absences in a six-month period. *Id.* at 107-108; Def. Exh. I.

In 2016, Walmart revised its Attendance/Punctuality Policy.  Def. Exh. H; Pl. Exh. C. Under the revised Attendance Policy, progressive discipline in the form of a Coaching under Walmart's Coaching for Improvement Policy was no longer utilized for attendance violations. *Id*.; Plaintiff's Depo. at 104:2-14.

Under the 2016 Attendance Policy,  unauthorized absences count as one (1) occurrence. Def. Exh. G at pg. 3; Def. Exh. H at pg. 3; Pl. Exh. C at pg. 3. If an associate is less than two (2) hours late, the associate would receive 0.5 or one-half of an occurrence. *Id*.  If an associate accumulated nine (9) or more occurrences in a rolling six-month period, through any combination, the associate would be subject to termination. Plaintiff's Depo. at 104:2-14; Def. Exh. H at pg. 2; Pl. Exh. C at pg. 2.

The new policy provides that absences due to authorized "Leave of Absence" will not result in disciplinary action.  Def. Exh. H at pgs. 1-2; Pl. Exh. C at pgs. 1-2.  Under "Leave of Absence," the policy further provides as follows:

> If an associate submits a request for a leave of absence (LOA) to Sedgwick, the associate must still report missed shifts as absences until the store receives notification from Sedgwick that an LOA has been requested. Failure to do so will result in the shift being coded as a No Call/No Show, and if the LOA is denied, the store must apply the appropriate number of occurrences. When an associate requests an LOA, any scheduled shifts missed after the request will be coded as conditional until Sedgwick approves or denies the request. Absences during the approved leave dates will be considered authorized.

If the request is denied, or if the approved LOA does not cover all missed shifts, missed shifts outside of any approved leave dates will be considered unauthorized absences. **The first three (3) unauthorized absences outside of any approved leave dates will be occurrences for purposes of this policy and will be considered within the applicable rolling six-month period to determine if the associate is subject to termination.** No more than three (3) occurrences will be considered for time missed after the LOA request and prior to Sedgwick's decision on the request. However, an associate who continues to miss shifts after a request is denied, or after the last approved day of the LOA, will incur additional occurrences unless the absences are otherwise authorized.

Def. Exh. H at pg. 4; Pl. Exh. C at pg. 4 (emphasis in original).

When the policy was being modified, Walmart associates were provided a Personal Associate Summary Sheet ("Summary Sheet"). Plaintiff reviewed and signed a Summary Sheet on February 23, 2016. Def. Exh. G.  The Summary Sheet explained the changes; how paid time off was handled or calculated; and gave a summary of how the changes impacted her time off. Plaintiff's Depo. at 101:16-102:1. According to the Summary Sheet, employees were responsible under the new Attendance Policy for tracking their own attendance, and once available, this could be done on the Global Time and Attendance Portal.  Def. Exh. G.

Plaintiff testified she was aware of the modifications to Walmart's Attendance Policy and when such modifications became effective. Plaintiff's Depo. at 101:2-102:1.  However, she testified the Summary Sheet was "very confusing." *Id*. at 101:21-102:2. According to Plaintiff, the Summary Sheet provided how an employee could track her own attendance through the attendance portal that was accessible through "the Wire," but access was only at the store.  *Id.* at 102:15-22.  Thus, when an employee was out on leave, the employee could not access the information.  *Id*. at 102:23-103:4.

***Plaintiff's FMLA Leave***

Plaintiff's husband suffered a heart attack on August 17, 2016. Plaintiff's Depo. at 112:16-22.

9

Plaintiff requested intermittent leave of absence ("Intermittent LOA").  Def. Exh. K. On August 18, 2016, Sedgwick became aware of Plaintiff's need to take Intermittent LOA due to her husband's serious health condition. Def. Exh. K. Plaintiff's Intermittent LOA to care for her husband for the six (6) month period from August 17, 2016 – February 17, 2017 was officially approved by Notification of Leave Approval dated September 8, 2016.  *Id*.; Porchia Aff., attach. 1; Plaintiff's Depo. at 118:8-16.

In the meantime, on August 18, 2016, Plaintiff received a LOA packet in the mail from Sedgwick with instructions. Plaintiff's Depo. at 117:4-25; Def. Exh. J. The LOA packet provided by Sedgwick to Plaintiff directed her to report all absences related to her Intermittent LOA directly to Sedgwick. Def. Exh. J. In this regard, Sedgwick's Disability and Leave Process Quick Reference Guide directed associates on intermittent leave to:

> **REPORT ABSENCES** Follow the normal call-in procedures for your facility/department by ensuring you report all absences for your intermittent leave in accordance with those guidelines. **All time away for an intermittent leave must be reported to Sedgwick within 2 days of the occurrence**.

*Id.* at pg. 2 (emphasis added).

In addition, Sedgwick's letter to Plaintiff regarding Notice of Eligibility and Rights & Responsibilities, contained in the LOA packet, provided the following:

> If intermittent Leave:
>
> > Report each intermittent absence to include all scheduled time missed to Sedgwick and your facility prior to the beginning of your shift. **Absences not reported to Sedgwick within two calendar days will not be approved and may result in accountability**.

*Id.* at pg. 3 (emphasis added).

The certification submitted by Plaintiff's husband's physician, and which was approved by

10

Sedgwick in the September 8, 2016 Notification of Leave Approval letter, allowed Plaintiff to be absent up to five times during the six-month period, with each absence not lasting more than two days each for incapacity/care and treatments or appointments, and one additional episode for up to four hours. Plaintiff's Depo. at118:20-119:19; Def. Exh. K.

Following her husband's heart attack on August 17, 2016, Plaintiff took a week and a half leave to care for him. Plaintiff's Decl., ¶ 4. According to her declaration, she went on intermittent leave and missed about nine days between this point and December 2016. *Id.*, ¶ 5.

As part of her Intermittent LOA, Plaintiff initially missed August 17, 18, 19 and 20. Plaintiff's Depo. at 119:20-120:6. On each of those initial days missed, Plaintiff complied with the Sedgwick reporting requirements and timely contacted Sedgwick to report her absences. *Id.* at 120:7-121:1 (stating she would not dispute Sedgwick's records indicating she called on those days and further stating she is sure she called to "get the LOA started.").

Starting on August 22, 2016, Plaintiff called in to the Walmart store but did not also report her absences to Sedgwick. *Id.* at 121:5-12 & 124:15-17. Plaintiff testified she did not call Sedgwick because she thought she was on continuous leave and did not have to call. *Id.* at 121:10-12. Plaintiff thought she had "put in for continuous leave with him having that heart attack." *Id.* at 121:15-16. Plaintiff testified as follows:

> I . . . thought I was on a continuous leave also, not just an intermittent. I was doing a continuous leave and also an intermittent leave to cover future dates as far as the intermittent, but continuous right away because he was under restrictions. He couldn't lift anything. He had stents placed. He wasn't allowed to lift over ten pounds.

*Id.* at 122:11-17. Plaintiff did not know at the time that one can apply for either intermittent leave or continuous leave. *Id.* at 124:25-125:3.

11

Even though she had talked with Sedgwick on the phone about wanting intermittent leave, Plaintiff thought she had applied for continuous leave at the same time. *Id*. at 122:23-123:2. She did not recall whether Sedgwick told her on the phone to call it when she was going to be absent. *Id.* at 123:13-15.  Although she knew at the time of her deposition she was supposed to call Sedgwick, she stated she did not know that at the time. *Id*. at 123:15-16. Plaintiff further testified she did not read the documents from Sedgwick:

> Q. [I]n the documents from Sedgwick, it also told you that you needed to call Sedgwick---
>
> A. Yes.
>
> Q. ---within two days every time you're absent?
>
> A. Yes.  And after he had his heart attack, I didn't read it.

*Id*. at 124:9-14.

Plaintiff stated at that point in time she was "kind of distraught." *Id.* at 125:20-21.  In information Plaintiff later submitted with her unemployment claim she stated she did not realize she had to call Sedgewick. *Id*. at 125:23-126:2. Plaintiff admitted she understood Sedgwick was the one that tracked her leave and made the decisions with respect to the leaves of absence so they would want to be kept abreast. *Id*. at 126:3-10.   However, she further explained she thought her calls in to Walmart would put Sedgwick on notice as well.  According to Plaintiff, Walmart would "ask when you call in if this is related to a LOA, and [she] would have put yes." *Id.* at 126:10-13.  Even though she had received the packet from Sedgwick stating she had to report absences to Sedgwick and Sedgwick had a different number, Plaintiff testified she assumed her call in to work reporting an absence related to LOA was "showing Sedgwick also." *Id*. at 126:14-127:10.

Plaintiff testified it was reasonable for Sedgwick to require that she call in:

> Q. …[D]o you agree it's reasonable for Walmart, Sedgwick to want you to call in to advise them if you're going to be absent on leave if it's an intermittent leave, or even if it's continuous leave, when you might be back or if there's any changes to that?
>
> A. Yes.

*Id.* at 145:10-16. When asked if she felt she should not have had to call in to Sedgwick, Plaintiff further testified as follows:

> Not necessarily.  When – I guess I didn't understand the fact of when you go on to Walmart to call in, that they have an option to put it on LOA there.  Why is that even there if you're going to call a completely different company anyway?  I mean, didn't seem to make a whole lot of sense.  Their systems are intertwined, so. . . .

*Id.* at 146:4-12.  Simply put, Plaintiff thought her call in to Walmart would be sufficient.  *Id.* at 146:13-15.

On November 30, 2016, Sedgwick became aware of Plaintiff's need to take leave on December 2, 2017 with an estimated end date of December 31, 2017 due to "the fact you are needed to care for your Daughter due to their serious medical condition."  Porchia Aff., attach. 2. On December 1, 2016, Plaintiff was notified that, before a final leave decision could be made, she had to provide medical documentation to support the leave request. *Id*. Even though Plaintiff was absent during this period, the leave was denied by letter dated December 23, 2016 because Sedgwick did not receive the requested medical certification documenting the need for leave within the required time frame. Def. Exh. L; Portia Aff., attach. 3.

Plaintiff submitted another FMLA leave request for her own medical condition to begin effective December 27, 2017 until January 10, 2017, which was approved. Plaintiff's Depo. at 136:3-8; Def. Exh. M. Plaintiff testified this request was related to back pain. Plaintiff's Depo. at 135:17-

22. In her declaration, Plaintiff stated she also took a one week leave with her daughter in January for gallbladder surgery.  Plaintiff's Decl., ¶ 6; *see also* Plaintiff's Depo. at 160-161 (explaining she was already out on leave during that time so she did not need a separate leave for her daughter).

On January 16, 2017, Plaintiff submitted a request, which was approved, to extend her leave from January 10, 2017 until January 19, 2017.  Def. Exh. N; Portia Aff., attach. 4. Because this leave was continuous, Sedgwick did not require Plaintiff to call in every day. Plaintiff's Depo. at 137:18-138:9. Plaintiff was able to come back to work following expiration of that leave. *Id*. at 138:17-23.

On January 20, 2017, Personnel Coordinator Christi McGowen ("McGowen") noted Plaintiff's leave balance was inaccurate and had not accounted for all of the leave McGowen knew Plaintiff had taken. Porchia Aff., ¶ 10. "To further investigate this discrepancy, on January 21, 2017, McGowen contacted Sedgwick to verify [Plaintiff's] leave eligibility."  *Id.*; *see also* Porchia Aff., attach. 5.  During this review, it was discovered Plaintiff had only reported intermittent leave on the following dates during August 2016: August 17, 18, 19, and 20. *Id.* Store records, however, indicated that Plaintiff had actually missed additional days that were not reported. Porchia Aff., ¶ 10; *see also* Porchia Aff., attach. 7.

At the direction of Sedgwick, McGowen instructed Plaintiff to contact Sedgwick to discuss the additional missed days. Porchia Aff., ¶ 11 and  attach. 5; Plaintiff's Depo. at 128:14-21; Def. Exh. B at pg. 5. On January 28, 2017, Plaintiff contacted Sedgwick to report the days that she considered to be associated with her Intermittent LOA. Plaintiff's Depo. at 129:14-15.

On January 31, 2017, Sedgwick notified the Walmart store and Plaintiff that a number of Plaintiff's Intermittent LOA absences were denied because she failed to report the missed days within the two-day reporting requirement. *Id*. at 130:2-16; Def. Exh. L. The dates denied totaled

14

fifteen days as follows: five in August 2016 (the 22, 23, 25, 26 and 27); two in September 2016 (the 6 and 19); one in October 2016 (the 17); three in November 2016 (the 1, 18 and 28); and four in December 2016 (the 2, 13, 19 and 20). Plaintiff's Depo. at 130, Def. Exh. L. Plaintiff also had two other absences in October 2016 that were not identified by Sedgwick as allegedly part of her intermittent leave; however, Plaintiff testified those two absences (October 10-11, 2016) were because she was sick.  Plaintiff's Depo. at 131:7-11.

On February 2, 2017, McGowen sent the Market Human Resource Manager, Angela Porchia, and the Store Manager, Self Hulon, an email outlining Plaintiff's pending attendance issues:

> I was checking leave balances summaries on via one express on 1/19/2017, I noticed Jolene Meisinger still had over 11 weeks of FMLA leave left, but I knew she had been away from work at least 2 weeks. I called Sedgwick on 1/20/17 to verify why her leave was calculated incorrectly. I went over each absence with Keisha over the phone. The only days she had called and reported to Sedgwick were 8/18/2016, 8/19/2016 & 8/20/2016. Keisha stated a case manager would have told Jolene when she first applied for her intermittent LOA to call in to Sedgwick each time she would be away from work to care for her husband. Keisha also stated the paperwork Jolene received from Sedgwick would have directed her to call in to Sedgwick each day she would be away from work, or those days would be denied.

Porchia Aff., ¶ 12 and attach. 7. Thereafter, over the next several weeks Porchia further evaluated this matter and also consulted with Walmart's legal department to determine the appropriate course of action based upon the determination made by Sedgwick. Porchia Aff., ¶ 12

Meanwhile, on February 10, 2017, Plaintiff requested an extension of her Intermittent LOA related to her husband's condition, which was approved by Sedgwick. Porchia Aff., ¶ 13 and attach. 8.

Plaintiff was put in the hospital on February 14, 2017 for chest pain.  Plaintiff's Decl., ¶ 6. She had a heart catheterization procedure done and was kept off work for seven days.  *Id.*  On

February 15, 2017, Plaintiff submitted another FMLA leave request related to the chest pain from February 11, 2017 until February 27, 2017. Plaintiff's Depo. at 138:24-140:23; Def. Exh. O. Plaintiff's leave was approved by Sedgwick from February 14, 2017 until February 27, 2017 Def. Exh. P. Plaintiff was off work for ten days following discharge because of "the incision to the artery." Plaintiff's Depo. at 141:6-12.

Plaintiff was notified that February 12 and 13 were not approved because her physician had not identified those dates as medically necessary. Def. Exh. P. As a result of such denial, Plaintiff incurred an absence on February 13, which counted as an occurrence under the Attendance Policy. Porchia Aff., ¶ 14. Plaintiff subsequently returned to work. Plaintiff's Depo. at 141:13-15.

From March 12 to mid-April, 2017, "Plaintiff's husband was in and out of the hospital where they found his stents had closed." Plaintiff's Decl., ¶ 7. According to her declaration, the doctors had planned surgery the week before but his platelets were too low. *Id*. Her husband had a triple bypass surgery on March 30, 2017.

On March 12, 2017, Plaintiff submitted a request for continuous leave of absence due to her husband's medical condition. Plaintiff's Depo. at 141:18-20. Sedgwick provided Plaintiff until April 6, 2017 to submit the required Medical Certification to determine her eligibility. Def. Exh. Q. Plaintiff was conditionally out on leave of absence in connection with this request pending review of the certification that was going to be submitted by her husband's doctor. Plaintiff's Depo. at 142:3-7. She never completed the leave because she was "fired by phone call on March 27[th.]" Plaintiff's Decl., ¶ 8.

***Plaintiff's FMLA Leave***

After Porchia further evaluated Plaintiff's attendance occurrences and consulted with

16

Walmart's legal department, "the determination was made to terminate [Plaintiff] for violation of the Attendance Policy based upon Plaintiff's excessive occurrences." Porchia Aff., ¶ 15. On March 27, 2017, Plaintiff's employment was terminated for excessive absences because of the excessive occurrences she accumulated under the Attendance Policy. *Id*. and attach. 11; Plaintiff's Depo. at 142:15-20.

According to Plaintiff's declaration, she was on FMLA leave for all days missed except two in which she was sick. Plaintiff's Decl., ¶ 8.  According to Porchia's affidavit, from September 27, 2016 to March 27, 2017 (within six months of Plaintiff's termination), Plaintiff incurred a total of twelve attendance occurrences in violation of Walmart Policy. Porchia Aff., ¶ 16 and attach. 7; Def. Exh. L. In addition to the absences found to be non-compliant/non-excused by Sedgwick for FMLA leave, Plaintiff had incurred additional absence occurrences unrelated to her FMLA leave on October 10 and 11, 2016 (when Plaintiff was sick) and December 18, 2016. Porchia Aff., ¶ 16 and attach. 10.

After the implementation of the new Attendance Policy, from February 23, 2016 to September 6, 2017, twenty-five associates, including Plaintiff, were terminated for violating the Attendance Policy. Porchia Aff., ¶ 17 and attach. 9. Plaintiff was the only one of those associates on FMLA leave at the time of termination. Porchia Aff., ¶ 17.

***Plaintiff's Declaration***

According to Plaintiff, her termination resulted in her insurance being terminated. Plaintiff's Decl., ¶ 8. Plaintiff states she had to come up with $1,000.00 so her husband could have surgery. *Id.*

Plaintiff further states her final check dated April 6, 2017 shows she had earned $748.20 paid time off. *Id.*, ¶ 9; Pl. Exh. F. According to Plaintiff, Walmart applied Plaintiff's paid time off to

17

Plaintiff's insurance, "even though Walmart had terminated the insurance, so [Plaintiff] received nothing."  Plaintiff's Decl., ¶ 9.

> Plaintiff further states as follows:
>
> I was told by Christi in Walmart personnel about the FMLA absences in question in January 2017. Christi told me to call Walmart's FMLA administrator Sedgwick and report the absences to them. I called Sedgwick and was told that because they weren't called in within two days the absences were unexcused even though they had been called into Walmart. I went back and told Christi what they said. Three days later, I was allowed to go back to work with nothing else being said about the situation and was even given a raise in February, 2017. Then on March 27, 2017, Jennifer Cook called me at around 8am and said first off how is your husband and I said he has to go for a triple bypass on Thursday. She responded good I'm glad to hear he is doing better. I'm calling you as a courtesy to let you know you're terminated. I asked for what and she said absences that Sedgwick didn't approve. I asked why am I just now being terminated for this and she said they just went through the emails. I sent my paperwork into Sedgwick on the 18th of March and was waiting on the doctor to fill out paperwork when they . . . cancelled it because I was terminated even though intermittent leave had been in effect since August 2016.

*Id.*, ¶ 10.

### *Plaintiff's Deposition*

Plaintiff testified Walmart interfered with her rights under the FMLA because she was not allowed to complete the last leave of absence.  Plaintiff's Depo. at 143:2-7.  Other than the failure to call in to Sedgwick issue, she did not have any issues with any of the prior leaves of absence determinations.  *Id*. at 143:8-12.

When Jennifer called to fire Plaintiff on March 27, it was a "shocker."  *Id*. at 146:18-147:18. Plaintiff asked Jennifer why Walmart was just now firing her if it was over the absences, noting Christi had said something to Plaintiff back in January.  *Id*. at 147:22-148:2.  This was confusing to Plaintiff; she would have assumed Walmart would have received the emails from Sedgwick as quick as Christi did.  *Id*. at 148:2-9.

Plaintiff testified she did not think she could be let go while on FMLA leave.  *Id.* at 151:9-10.

She stated there were several different instances at Walmart with different people where things had

been overlooked.  *Id.* at 151:10-12.  According to Plaintiff, Jesse Dunson, a department manager

over the garden center, had attendance violations and did not get fired for them.  *Id.* at 151:13-

152:18.  She did not know how many absences he had accumulated or whether it was under the old

attendance policy or the new one.  *Id.* at 151:19-25.

Plaintiff further testified there was a recently-retired Walmart employee, Joan Crus, who was

always in and out on leave and never fired.  *Id.* at 154:1-15.  Plaintiff did not know any specifics

about her situation or specifically if there was a problem with her calling in to Sedgwick or whether

she ever violated any policies.  *Id.* at 154:9-25.  According to Plaintiff, things were made hard for

her though; people would not help her, and she was "kind of like the outcast."  *Id.* at 155:2-14.

Plaintiff believed Walmart gave Crus preferential treatment because she was a longtime employee

there.  *Id.* at 157:11-19.

Plaintiff stated she thought Walmart should have made an exception with respect to its

attendance policy and the occurrences to avoid discharging Plaintiff.  *Id.* at 162:9-15.  She thought

Walmart was considering such an exception because Sedgwick told Plaintiff sometimes "they work

things out" and because nothing was said about it after Plaintiff went back to Christi in January.  *Id.*

at 162:15-163:5.  Plaintiff stated she worked hard and did her job, and she can see no other reason

for her discharge other than "being off" on leave.  *Id.* at 167:10-23.

## V.  APPLICABLE LAW

The FMLA, enacted in 1993, is intended to "balance the demands of the workplace with the

needs of families" and "entitle employees to take reasonable leave for medical reasons." 29 U.S.C.

§§ 2601(b)(1) and (2). The FMLA entitles an employee to take up to twelve weeks of unpaid leave per year for: (A) the care of a newborn child; (B) the adoption or foster-care placement of a child; (C) the care of certain family members who have serious health conditions; or (D) the employee's own "serious health condition" when the condition interferes with the employee's ability to perform at work. *See* 29 U.S.C. § 2612(a)(1). "Courts often refer to subparagraphs (A), (B), and (C) as "the family-care provisions," while subparagraph (D) is referred to as "the self-care provision." *Honglinh Huynh v. Harris Health Systems*, 2014 WL 1379912, * 2 (S.D. Tex. April 8, 2014). Plaintiff had both claims.

The FMLA contains two distinct provisions. *See Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Section 2615(a)(1) creates a series of entitlements or substantive rights. *Id*. Section 2615(a)(2) is proscriptive, and protects employees from retaliation for exercising their rights. *Id.* Stated differently, § 2615(a) creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works and Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir.2001) (internal citations omitted).

"A major distinction between these two types of claims is that interference claims *do not* require a showing of discriminatory intent, whereas retaliation claims *do.*" *Kendall v. Walgreen Co.*, 2014 WL 1513960, at *4 (W.D. Tex. Apr. 16, 2014) (citing *Cuellar v. Keppel Amfels, L.L.C.,* 731 F.3d 342,349 (5th Cir.2013)). In addition, the majority of courts hold that the *McDonnell Douglas* burden-shifting framework does not apply to interference claims under the FMLA, but do apply to

20

retaliation claims. *Kendall*, 2014 WL 1513960, at *4.

Here, Plaintiff alleges both retaliation and interference claims against Defendant.

## VI.  DISCUSSION

**A.      Plaintiff claim for interference with rights under § 2615(a)(1)**

**1.      Applicable law**

To prevail on her claim for interference with her FMLA rights, Plaintiff must establish: (1) she is an eligible employee under the FMLA; (2) the defendant is an employer subject to the requirements of the FMLA; (3) she was entitled to FMLA leave; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA. *Jordon v. Texas Dep't of Aging and Disabilities Servs*., No. 9:05cv161, 2006 U.S. DIST. LEXIS 43895, *15-16 (E.D. Tex. June 28, 2006). Department of Labor regulations provide that "interfering with" the exercise of an employee's rights "would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" and "manipulation by a covered employer to avoid responsibilities under FMLA." *Kendall*, 2014 WL 1513960, at *4.  To establish an interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1293 (11th Cir.2006).  The employer's motives are irrelevant. *Id.*

**2.      Defendant's assertions**

The parties do not dispute Plaintiff was an eligible employee or that Defendant was subject to the FMLA's requirements.  They do dispute whether Plaintiff gave notice of her intention to take FMLA leave and whether Defendant denied Plaintiff FMLA benefits to which she was entitled.

Defendant asserts Plaintiff violated Defendant's usual and customary notice and procedural requirements, depriving her of the protections of the FMLA.

Defendant further asserts the summary judgment evidence clearly establishes Plaintiff would have been terminated regardless of her request for additional FMLA leave. According to Defendant, it is undisputed the basis for Plaintiff's termination was Plaintiff's failure to timely notify Sedgwick of her intermittent absences in violation of Sedgwick's call-in procedure, which contributed to Plaintiff accumulating numerous attendance occurrences in violation of Walmart's Attendance Policy.

3.    **Discussion**

***Whether Plaintiff gave proper notice of her intention to take leave***

While the employee has a right to take leave under the FMLA, the employee must give his employer notice of his intention to take leave in order to be entitled to it. *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). When the need for leave is foreseeable, the employee generally "must provide the employer at least 30 days advance notice before FMLA leave is to begin." *Id.* (quoting 29 C.F.R. § 825.302(a)). If 30 days' notice is not practicable, "notice must be given as soon as practicable." *Id.* In all instances, "an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Acker*, 853 F.3d at 788 (quoting 29 C.F.R. § 825.302(d)). "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied." Acker, 853 F.3d at 789 (quoting 29 C.F.R. § 825.302(d)).

"[A]n employer generally does not violate the FMLA if it terminates an employee for failing

to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA*." *Acker*, 853 F.3d at 789 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008–09 (10th Cir. 2011) (emphasis in original) and *Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) ("Employers who enforce [call-in] policies by firing employees on FMLA leave for noncompliance do not violate the FMLA.")). Discipline resulting from the employee's failure to comply with the usual and customary procedures for requesting FMLA leave does not constitute interference with the exercise of FMLA rights unless the employee can show unusual circumstances. *Acker*, 853 F.3d at 789. "Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations." *Id.* (quoting *Twigg*, 659 F.3d at 1009; *Goff v. Singing River Health Sys.,* 6 F.Supp.3d 704, 711 (S.D. Miss. 2014) (summary judgment is appropriate in FMLA case without evidence of unusual circumstances excusing employee's failure to call employer timely)).

In its motion, Defendant primarily relies on *Acker*, asserting the Fifth Circuit in that case considered facts very similar to those presented here.  In *Acker*, the plaintiff was a General Motors, L.L.C. ("GM") employee who was approved for intermittent FMLA leave "but on several occasions was absent from work and did not follow company protocol for requesting FMLA leave."  853 F.3d at 786.  The plaintiff "suffered several weeks of disciplinary unpaid layoff and sued GM for FMLA interference and retaliation. . . ." *Id*. The district court entered summary judgment for GM.  *Id.*  On appeal, the Fifth Circuit affirmed, "principally because the FMLA and accompanying regulations require employees to follow their employer's 'usual and customary' procedures for requesting FMLA leave absent 'unusual circumstances.'" *Id.* (quoting 29 C.F.R. § 825.303(c)).

23

In *Acker*, the Fifth Circuit evaluated GMs "detailed attendance policy," which was the product of collective bargaining between GM and the union.  *Acker*, 853 F.3d at 786.  GM also had a policy for requesting FMLA leave.  *Id*. at 787.  Pursuant to GM's policy, employees must make an initial request for FMLA leave with GM's Benefits & Services center, administered by third-party vendor Sedgwick.  *Id*.  "Once an employee ha[d] requested intermittent FMLA leave, Sedgwick sen[t] the employee a letter reiterating GM's policies for requesting and taking leave."  *Id*.  This policy was described in an employee letter and required employees to give notice of intermittent FMLA leave by calling in on the usual General Motors absence line and also calling a specified "benefits and services" line particular to FMLA leave. *Id*.

The claim in *Acker*, like Plaintiff's interference claim here, hinged on the question of notice. It was undisputed that Acker's phone records showed he failed to call in timely under GM's procedure on the dates for which he received disciplinary layoff.  *Id.* at 789.  According to the Fifth Circuit, "in order to establish FMLA interference, Acker [had] to show that for each of these non-FMLA-approved absences, unusual circumstances prevented him from following the union-negotiated procedures."  *Id*.

The Fifth Circuit stated Acker did not explain why "unusual circumstances arising from his condition prevented him from complying with GM's call-in policy with respect to one line but not the other. *Id*. at 790. Because Acker had failed to comply with GM's usual procedures for requesting FMLA leave, and he could not prove that unusual circumstances prevented him from following those procedures, the Fifth Circuit determined GM was entitled to summary judgment on the employee's interference claim. *Id.* at 789-90.

24

Plaintiff asserts *Acker* is distinguishable, and the Court agrees.  First, GM (not Sedgwick) had the policy that required the two phone calls. Second, the detailed notice provisions were set forth in a collective bargaining agreement which covered the plaintiff. Third, there were union benefit representatives at each GM facility to assist employees with FMLA leave. *Id.* at 787. Fourth, no unusual circumstances prevented the plaintiff from following the "union-negotiated procedures." *Id.* at 789.  Fifth, the plaintiff in *Acker* had not been terminated while on FMLA leave.  GM retained him with an opportunity to correct his attendance issues.  *Id.* at 788.

By contrast, neither Walmart's Attendance Policy nor the FMLA Leave of Absence Policy required Plaintiff to report to Sedgwick absences considered to be covered by intermittent leave. Walmart's FMLA Leave of Absence Policy states an employee must give notice of unforeseeable leave as soon as possible, generally the same day or the following business day after learning she needs to take leave.  Pl. Exh. B at pg. 2.  The policy further provides if an employee misses work for more than three days because a family member is ill, the employee should immediately contact Sedgwick, so it can be determined whether FMLA leave is available.  *Id.* Plaintiff asserts she gave proper notices to Walmart as required by Walmart's policies.

As stated earlier, under "Leave of Absence," Walmart's 2016 Attendance Policy provides as follows:

> If an associate submits a request for a leave of absence (LOA) to Sedgwick, the associate must still report missed shifts as absences until the store receives notification from Sedgwick that an LOA has been requested. Failure to do so will result in the shift being coded as a No Call/No Show, and if the LOA is denied, the store must apply the appropriate number of occurrences. When an associate requests an LOA, any scheduled shifts missed after the request will be coded as conditional until Sedgwick approves or denies the request. Absences during the approved leave dates will be considered authorized.

25

If the request is denied, or if the approved LOA does not cover all missed shifts, missed shifts outside of any approved leave dates will be considered unauthorized absences. **The first three (3) unauthorized absences outside of any approved leave dates will be occurrences for purposes of this policy and will be considered within the applicable rolling six-month period to determine if the associate is subject to termination.** No more than three (3) occurrences will be considered for time missed after the LOA request and prior to Sedgwick's decision on the request. However, an associate who continues to miss shifts after a request is denied, or after the last approved day of the LOA, will incur additional occurrences unless the absences are otherwise authorized.

Def. Exh. H at pg. 4; Pl. Exh. C at pg. 4 (emphasis in original).

It was Sedgwick's Disability and Leave Process Quick Reference Guide, mailed to Plaintiff following her husband's heart attack, which directed associates on intermittent leave to follow the normal call-in procedures for the associate's facility/department by ensuring the associate reported all absences for his or her intermittent leave in accordance with those guidelines. This packet also provided that all time away for an intermittent leave must be reported to Sedgwick within two days of the occurrence. Def. Exh. J at pg. 2. In addition, Sedgwick's letter to Plaintiff regarding Notice of Eligibility and Rights & Responsibilities, contained in the LOA packet, provided the following:

If intermittent Leave:

Report each intermittent absence to include all scheduled time missed to Sedgwick and your facility prior to the beginning of your shift. **Absences not reported to Sedgwick within two calendar days will not be approved and may result in accountability**.

*Id.* at pg. 3 (emphasis added).

Defendant asserts it is undisputed Plaintiff was aware of the requirements of the Walmart Attendance Policy and the Sedgwick FMLA call-in procedures, yet failed to comply with those requirements.   The Court disagrees.   Plaintiff testified she was aware of the modifications to

Walmart's Attendance Policy and when such modifications became effective. Plaintiff's Depo. at 101:2-102:1. However, she testified the Summary Sheet was "very confusing." *Id*. at 101:21-102:2. According to Plaintiff, the Summary Sheet provided how an employee could track her own attendance through the attendance portal that was accessible through "the Wire," but access was only at the store. *Id*. at 102:15-22. Thus, when an employee was out on leave, the employee could not access the information. *Id*. at 102:23-103:4.

Plaintiff testified she did not call Sedgwick following every absence during her Intermittent LOA because she thought she was on continuous leave and did not have to call. *Id*. at 121:10-12. Plaintiff thought she had applied for continuous leave at the same time she had applied for intermittent leave. *Id*. at 122:23-123:2. Plaintiff testified as follows:

> I . . . thought I was on a continuous leave also, not just an intermittent. I was doing a continuous leave and also an intermittent leave to cover future dates as far as the intermittent, but continuous right away because he was under restrictions. He couldn't lift anything. He had stents placed. He wasn't allowed to lift over ten pounds.

*Id.* at 122:11-17.

The Court is not convinced Plaintiff failed to adhere to Defendant's usual and customary policies for requesting leave absent unusual circumstances.[1] Plaintiff has also offered evidence of

---

[1] The FMLA does not define "unusual circumstances" *Verges v. Honda Mfg. of Alabama, LLC*, Civ. A. No. 11–1261, 2012 WL 3260367, at *3 n. 2 (N.D. Ala. Aug. 8, 2012). However, § 825.303(c) provides an example of unusual circumstances: "However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c). Courts have deemed circumstances "unusual" when the medical condition or illness prevents compliance with the normal procedures, *see Howard v. VT Halter Marine, Inc.,* 2011 WL 2414672 (S.D. Miss. June 10, 2011), the employee cannot access a phone, *see Flores v. Murphy Co.,* 2014 WL 584553, at *6 (D. Or. Feb. 12, 2014), the employer's policies conflict with the law, *see Millea v. Metro–North R. Co.,* 658 F.3d 154, 161–62 (2nd Cir. 2011), or the employer has misled

ignorance of Sedgwick's two-day call-in requirement. Although she knew at the time of her deposition she was supposed to call Sedgwick, she stated she did not know that at the time. Plaintiff's Depo. at 123:15-16. Plaintiff testified she did not read the documents from Sedgwick following her husband's heart attack because she was distraught. *Id*. at 124:9-14 & 125:20-21.  In information Plaintiff later submitted with her unemployment claim she stated she did not realize she had to call Sedgewick. *Id*. at 125:23-126:2.  Plaintiff thought her calls in to Walmart would put Sedgwick on notice as well.  *Id*. at 126:10-127:10.  The Court does not find Plaintiff cannot prove the fourth prong of her prima facie case as a matter of law.

### *Whether Defendant  denied Plaintiff benefits to which she was entitled under the FMLA*

Defendant next asserts Plaintiff is unable to prove the fifth prong (that she was denied benefits to which she was entitled under the FMLA).  As a general proposition, "[a]n employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave.*" Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 391 (5th Cir. 2008).  Defendant argues Plaintiff accumulated over nine attendance occurrences during a rolling six-month period and would have been terminated pursuant to Walmart's Attendance Policy regardless of her request for leave.

According to Plaintiff's response, there are material issues of disputed facts because there are the following "serious conflicts" in Walmart's summary judgment evidence:

•      Walmart's policies do not require reporting of use of intermittent leave except to Walmart,

---

the employee is some way regarding the proper procedures, *see Uselton v. CSX Transp., Inc.,* 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014).

which was done.

- The affidavit of Angela Porchia states in paragraph 16 that Plaintiff incurred a total of 12 occurrences, citing attachment 7, which shows only 8 reported occurrences, which are permissible.

- The same Porchia Affidavit also refers in paragraph 14 to attachment 10, which lists 15.5 occurrences.

- Walmart's motion at paragraph 17 on page 10 lists only 8 occurrences within the six-month rolling period ending on March 27, 2016.

(Docket Entry # 27 at pg. 7).

According to Plaintiff, Walmart was aware of the Sedgwick paperwork problem in January 2017 and took no action.  Plaintiff was told to call Sedgwick (which she did) and was allowed to return to work.  She even received a raise in February 2017. Plaintiff states Porchia had McGowen's memo on February 2, 2017 and consulted with the Walmart legal department about Plaintiff's situation but took no action until March 27, 2017 after Plaintiff had made a request on March 12, 2017 for continuous leave of absence due to her husband's failing medical condition.

The Court does not find Plaintiff cannot prove the fifth prong of her prima facie case as a matter of law.  Plaintiff has raised a fact issue for FMLA interference.  Accordingly, the Court recommends Defendant's motion to dismiss Plaintiff's interference claim be denied.

**B.     Plaintiff's claim for retaliation for exercising rights under § 2615(a)(2)**

**1.     Applicable law**

The FMLA also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices. 29 U.S.C. § 2615(a)(2). In analyzing claims under § 2615(a)(2), where there is no direct evidence of retaliation, the Fifth Circuit has adopted the three-part burden shifting framework under *McDonnell Douglas*

29

*Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Richardson v. Monitronics Intern., Inc.,* 434 F.3d 327, 332 (5th Cir. 2005); *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013).

To prevail on an FMLA retaliation claim, Plaintiff must first demonstrate a prima facie case for retaliation by showing that (1) she engaged in protected activity, i.e., requesting or taking FMLA-qualifying leave, (2) an adverse employment action occurred, and (3) she was either treated less favorably than a similarly situated employee who had not requested leave or there is a casual link between the protected activity and adverse employment action. *IGNACIO G. DELAO JR., Plaintiff, v. VT SAN ANTONIO AEROSPACE, INC., Defendant.*, No. SA-17-CV-00139-ESC, 2018 WL 3603067, at *5 (W.D. Tex. June 11, 2018) (citing *Mauder v. Met. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2016)). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *Acker*, 853 F.3d at 790 (quoting *Richardson,* 434 F.3d at 332).

If Plaintiff establishes a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action taken. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). If Defendant meets this production obligation, the burden shifts back to Plaintiff to show "by a preponderance of the evidence that the reasoning presented by [Defendant] is a pretext for retaliation." *See Mauder*, 446 F.3d at 583 (internal quotation marks omitted).

## 2.    Defendant's assertions

Defendant asserts Plaintiff cannot establish the third prong of her prima facie case: that she was treated less favorable than an employee who had not requested leave or that her termination was

because she sought protection under the FMLA. Even if Plaintiff could establish a prima facie case, Defendant asserts it would still be entitled to summary judgment because the summary judgment evidence establishes Plaintiff was terminated for a legitimate, non-discriminatory reason (violation of Walmart's uniformly applied Attendance Policy), and Plaintiff cannot point to any competent summary judgment evidence to establish a question as to the veracity of Walmart's stated reason for her termination.

**3.     Discussion**

As to Plaintiff's prima facie case, Defendant does not contest there was participation in protected activity under the FMLA or an adverse employment action occurred.  Defendant contests whether Plaintiff has shown a causal link between the activity and the adverse action.

As with the interference claim, Defendant argues Plaintiff was terminated for violation of Walmart's uniformly applied Attendance Policy.  According to Defendant, Plaintiff has failed to present evidence that she was treated less favorably than someone who had not requested FMLA leave or that Sedgwick or Walmart was inconsistent in the application of the call-in procedures or the Attendance Policy.

When evaluating whether the adverse employment action was causally related to the FMLA protection, courts can consider the "temporal proximity" between the FMLA leave and the termination. However, temporal proximity alone is insufficient to prove a causal link connecting the protected activity and the adverse employment action. *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (stating the Supreme Court made clear in *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) that (1) to be persuasive evidence, temporal proximity

must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation). Here, the Court finds the temporal proximity very close and sufficient to establish a prima facie case of retaliation.

The Court next considers whether Defendant has met its burden of showing Plaintiff was terminated for the following legitimate, non-discriminatory reason: violation of Walmart's 2016 Attendance Policy.  According to Defendant, from September 27, 2016 to March 27, 2017 (within six months of Plaintiff's termination), Plaintiff accumulated over nine attendance occurrences in violation of Walmart's Attendance Policy based on Plaintiff's failure to timely notify Sedgwick of her intermittent leave absences in violation of Sedgwick's call-in procedure.

As noted above, Plaintiff asserts there are discrepancies in the evidence as to the number of relevant occurrences at the time of Plaintiff's termination.  Attachment 6 to the Porchia Affidavit is a Sedgwick Absence Denial dated January 31, 2017, wherein Sedgwick notified the Walmart store and Plaintiff that a total of fifteen Intermittent LOA absences were denied because Plaintiff failed to report the missed days within the two-day reporting requirement.  Porchia Aff., attach. 6. Seven of those dates (in August and September) were not within six months of Plaintiff's termination. Therefore, there were eight absences related to her Intermittent FMLA leave (October 17, 2016, November 1, 18, and 28, 2016 and December 2, 13, 19, and 20, 2016).  Although Walmart's motion at page 10 only lists these eight occurrences related to Plaintiff's Intermittent LOA within the six-month rolling period ending on March 27, 2016, Defendant also relies on paragraph 16 of the Porchia Affidavit where Porchia listed three additional absence occurrences Plaintiff incurred during

the relevant time period unrelated to her FMLA leave.[2]  *See* Porchia Aff., ¶ 16.

According to Plaintiff, paragraph 16 of the Porchia Affidavit references twelve occurrences from September 27, 2016 to March 27, 2017, citing attachment 7. A review of attachment 7, however, reveals only eight occurrences between August 22 and November 28, and it includes the two sick days never reported as Intermittent LOA.

Considering all of the evidence, the Court will assume Defendant has provided a legitimate, non-discriminatory reason for terminating Plaintiff.  The burden now returns to Plaintiff, who must then be afforded an opportunity to rebut the employer's purported explanation with evidence that the reason given is merely pretextual.  *Garcia v. Penske Logistics, L.L.C.*, 631 Fed. Appx. 204, 210 (5th Cir. 2015). "A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment." *Id.* (citations omitted).  "At present, FMLA retaliation claims are analyzed solely by determining whether the discrimination was a motivating factor in the adverse employment decision." *Id.* (citing *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir.2005)).

Plaintiff asserts there are material factual disputes as to the number of occurrences. Regardless of the number, Plaintiff argues "it is clear that Ms. Porchia had virtually all of the information about occurrences by virtue of receiving the McGowen memo on February 2, 2017, but took no action to terminate Plaintiff until March 27, 2017, almost 2 months later."  Docket Entry # 27 at pg. 9.  Only after Plaintiff made an FMLA request on March 12, 2017, did Walmart terminate Plaintiff.

---

[2] Plaintiff testified two of those absences (October 10-11, 2016) were because she was sick. Plaintiff's Depo. at 131:7-11.

In light of all of the evidence and the timing of the termination, the Court finds Plaintiff has presented sufficient evidence that raises a genuine issue of material fact that retaliation—and not violation of Walmart's Attendance Policy—was the real reason for her termination. The Court recommends Defendant's motion to dismiss Plaintiff's retaliation claim under the FMLA be denied. Based on the foregoing, it is

**RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry # 25) be **DENIED**.

<u>Objections</u>

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir.1988).

**SIGNED this 1st day of August, 2018.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE